IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| AMBER COULTER,<br><br>        Plaintiff,<br><br>    v.<br><br>I.Q. DATA,<br><br>        Defendant. | Civil Action No. 24-6794 (RMB-MJS)<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge**

    **THIS MATTER** comes before the Court on a Motion to Dismiss filed by Defendant I.Q. Data ("Defendant"). [Docket No. 15.] Having considered the parties' submissions, the Court resolves the Motion without oral argument. FED. R. CIV. P. 78(b); D.N.J. LOC. CIV. R. 78.1(b). For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED** and the Complaint **DISMISSED WITHOUT PREJUDICE**. Plaintiff Amber Coulter ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, will be permitted to file an amended complaint within thirty (30) days to address the deficiencies identified below. If Plaintiff elects not to file an amended complaint, the Court will deem the Complaint dismissed with prejudice.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    In February 2024, Plaintiff "sent certified dispute letters to Experian, TransUnion, and Equifax regarding an account reported by" Defendant.[1] [Docket No. 1-4, at 2.] The account

---

[1] The following allegations and causes of action are drawn from a letter accompanying the formal Complaint, which the Court will consider in evaluating Defendant's Motion. *See*

in question appears to be a leasing or rental debt in the amount of $37,987.00. [*Id.*, at 8–9, 16, 18, 24.] "In these letters," Plaintiff "requested verification and validation of the account." [*Id.*] Plaintiff alleges that "none of the credit reporting agencies (CRAs) provided any response or results of reinvestigation." [*Id.*] The following month Plaintiff "sent a certified letter directly to" Defendant "explicitly disput[ing] the debt and refus[ing] to pay it, citing its inaccuracy and lack of validation." [*Id.*]

Defendant received the letter in May 2024. [*Id.*] "Instead of ceasing all communications", Defendant "continued to send [Plaintiff] documents unrelated to [her] account." [*Id.*] In these documents, Defendant allegedly "falsely represented the amount, character, and legal status of the debt" by "contain[ing] inaccurate information and … not reflect[ing] the true nature of the alleged debt." [*Id.*] Plaintiff further claims that Defendant "furnish[ed] inaccurate information to the CRAs and fail[ed] to correct it." [*Id.*] "Due to these violations," Plaintiff purportedly suffered significant harm, including denial of credit, financial distress, and damage to her credit score and reputation, which have limited her ability to secure housing and other essential financial services. [*Id.*]

On June 5, 2024, Plaintiff filed suit, alleging that Defendant violated § 1692c(c) and § 1692e(2) of the Fair Debt Collection Practices Act ("FDCPA") "for continuing communication despite my refusal to pay and for false representation of the debt", and

---

*Beasley v. Howard*, 623 F. Supp. 3d 434, 439 (D.N.J. 2022) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) ("Thus, a '*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."). The Court will therefore decline Defendant's initial basis for granting its Motion on the exclusion of the letter. [Docket No. 15-2, at 4–5 ("Def.'s Br.").]

§ 1681s-2(b) of the Fair Credit Reporting Act ("FCRA") "for furnishing inaccurate information to the CRAs and failing to correct it." [*Id.*] Plaintiff is seeking actual, compensatory, and punitive damages. [*Id.*] On July 10, 2025, Defendant timely moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docket No. 15.]

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A party may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *id.* at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

When considering a 12(b)(6) motion to dismiss, a district court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Evancho v. Fisher*, 423 F.3d 347, 350–51 (3d Cir. 2005) (internal citations omitted). "However, a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)). The proper role of the district court in reviewing the sufficiency of a complaint is thus limited: the issue is not "whether the plaintiffs will ultimately prevail" but "whether they are entitled

3

to offer evidence to support their claims." *Langford v. City of Atl. City*, 235 F.3d 845, 847 (3d Cir. 2000). "When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim." *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016) (citation omitted).

Plaintiff has supplemented her blank form Complaint with a letter outlining her allegations and claims as well as "copies of … dispute letters, certified mail receipts, and evidence of the inaccurate information and ongoing communications from" Defendant. [Docket No. 1-4, at 2–25.] Although this miscellany "lacks the targeted and clear pleading that is expected of pleadings drafted by attorneys", *Beasley*, 623 F. Supp. 3d at 439, "[a] *pro se* plaintiff's complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers", *Russomanno v. U.S. Dist. Ct. of NJ, Trenton*, No. CV 2542550 (RK) (JBD), 2025 WL 3022172, at *3 (D.N.J. Oct. 29, 2025) (internal citation and quotation marks omitted); *see also Erickson*, 551 U.S. at 94. Notwithstanding the liberal construction of her pleadings, Plaintiff "still must allege sufficient facts in [her] complaint[ ] to support a claim." *Owens v. Armstrong*, 171 F. Supp. 3d 316, 328 (D.N.J. 2016) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)). In other words, Plaintiff is not exempt from complying with federal pleading standards. *See Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).

### III.   DISCUSSION

Plaintiff alleges that Defendant violated § 1692c(c) and § 1692e(2) of the FDCPA and § 1681s-2(b) of the FCRA. [Docket No. 1-4, at 2.] Defendant variably contends that Plaintiff has failed to state these claims. [Def.'s Br., at 4–9.]

A. **Fair Debt Collection Practices Act**

"The FDCPA provides a remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors." *Piper v. Portnoff L. Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005) (internal citation omitted). "To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 358 (3d Cir. 2018) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)). The only contested element at issue is the fourth—whether Defendant has violated § 1692c(c) and § 1692e(2) of the FDCPA. *See* [Def.'s Br., at 5–8.]

1. **Section 1692c(c)**

The Court addresses first Plaintiff's claim brought under § 1692c(c), which provides in pertinent part:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—
>
> (1) to advise the consumer that the debt collector's further efforts are being terminated;
>
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy. If such notice from the consumer is made by mail, notification shall be complete upon receipt.

5

15 U.S.C. § 1692c(c). Defendants allegedly violated this provision of the FDCPA for not "ceasing all communications" and "continu[ing] to send [Plaintiff] documents unrelated to [her] account" after she sent a letter "explicitly disput[ing] the debt and refus[ing] to pay it, citing its inaccuracy and lack of validation." [Docket No. 1-4, at 2.] Plaintiff's claim fails for two reasons.

Initially, the Complaint alleges that Defendant "continued to send [her] documents *unrelated* to [her] account." [*Id.* (emphasis added).] Section 1692c(c) is not a blanket incommunicado interdiction; rather, it prohibits debt collectors from communicating with debtors about "a debt", following notification not to do so, "with respect to *such debt*". 15 U.S.C. § 1692c(c) (emphasis added). The plain language of § 1692c(c) clearly does not envision liability for "unrelated" communications, nor does Plaintiff argue otherwise.[2] *See* [Docket Nos. 16–17.]

---

[2] Plaintiff is advised that "[t]he brief and papers in opposition to a motion, specifying the motion day on the cover page, with proof or acknowledgment of service thereof on all other parties, must be filed with the Clerk at least 14 days prior to the original motion day, unless the Court otherwise orders, or an automatic extension is obtained …." D.N.J. LOC. CIV. R. 7.1(d)(2). Given the operative motion day of July 21, 2025, and the absence of any applicable order, Plaintiff's two Responses filed on August 1 and September 9, 2025, are untimely. What is more, Plaintiff filed the second Response without leave of this Court. Nevertheless, the Court, in its discretion, will consider both of Plaintiff's Responses because of her *pro se* status and for the innocuous fact that they do not otherwise alter the outcome of this Opinion. *See D'Orazio v. Washington Twp.*, 501 F. App'x 185, 187 (3d Cir. 2012) (citing N.J. LOC. CIV. R. 7.1(d)(7)) ("It is within the District Court's discretion to accept late filings."). The Court's consideration will not, however, permit these Responses to amend the Complaint, such as by setting forth new causes of action. *See* [Docket Nos. 16, at 1; 17, at 2–3 (alleging violations of 15 U.S.C. §§ 1681c-2, 1692d, 1692f, 1692g for first time)]; *Pa. ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

As for Plaintiff's Motion for Leave to File a Sur-Reply, [Docket No. 20], the Court will deny it. *See Derieux v. FedEx Ground Package Sys., Inc.*, No. CV 21-13645 (NLH) (EAP), 2023 WL 349495, at *1 n.1 (D.N.J. Jan. 20, 2023) (quoting *Levey v. Brownstone Inv. Grp., LLC*, 590 F. App'x 132, 137 (3d Cir. 2014)) ("[P]ermission for leave to file a sur-reply is a matter

Second, Plaintiff "does not allege that the 'documents' that she received following her written request to cease communications were communications that would not be permissible pursuant to § 1692c(c)'s three exceptions."[3] *Coulter v. Portfolio Recovery Assocs., LLC*, No. 24-6799 (KMW-EAP), 2024 WL 4265509, at *1 (D.N.J. Sept. 20, 2024) (dismissing Plaintiff's § 1692c(c) claim, in part, for this pleading omission); *see* [Docket No. 1-4.] As Judge Williams determined in dismissing Plaintiff's § 1692c(c) claim in a separate case with nearly identical allegations: "Simply put, stating that Defendant 'continued to send me documents unrelated to my account,' is not sufficient to show that § 1692c(c) was violated."[4] *Coulter*, 2024 WL 4265509, at *1.

---

'committed to the District Court's sound discretion' ...."). Besides the untimeliness of Plaintiff's Responses, Defendant's Reply does not raise any new issues that are not addressed (or were addressable) in Plaintiff's Responses. *See* [Docket No. 18]; *Derieux*, 2023 WL 349495, at *1 n.1 (internal citation omitted) ("Courts in this District have granted leave to file sur-replies to address new issues in the interest of completeness, for complicated and novel legal questions, or for unusual circumstances."); *Healthquest of Cent. Jersey, LLC v. Antares AUL Syndicate 1274*, No. 18-12375, 2020 WL 4431770, at *6 (D.N.J. July 31, 2020) (explaining that sur-replies are appropriate for addressing new issues raised for the first time in a reply brief, but not for "providing the Court with arguments that could have been included in the earlier opposition brief"). And, as stated, the Court has decided to include both of Plaintiff's Responses in its review of the Motion to Dismiss. For Plaintiff's peace of mind, her proposed Sur-Reply would not change the outcome of this Opinion in any event.

[3] Of course, if, as Plaintiff alleges, the documents are "unrelated to [her] account", then they could not fit into one of the three debt-specific categories by definition. Nor has Plaintiff submitted the referenced documents for review to otherwise construe the "unrelated" allegation as a possible solecism. *See* [Docket No. 1-4.]

[4] At this time, the Court will not base its dismissal on Defendant's additional argument that the alleged documents do not "exhibit any abusive or deceptive conduct that the FDCPA was meant to curtail." [Def.'s Br., at 6.] While such a ban is indeed the intended purpose of the FDCPA, *see Piper*, 396 F.3d at 232; *Brown v. Apex Asset Mgmt., LLC*, No. 23-3749, 2024 WL 3272450 at *5 (D.N.J. Jul. 1, 2024), Plaintiff alleges that the documents "provided inaccurate information and do not reflect the true nature of the alleged debt," thus "falsely represent[ing] the amount, character, and legal status of the debt," [Docket No. 1-4, at 2], which Defendant acknowledges is a violation of the FDCPA, [Def.'s Br., at 6]. That said, Plaintiff self-contradictorily alleges that the documents are "unrelated" to the debt, and it is otherwise

7

### 2. Section 1692e(2)

Next is Plaintiff's claim brought pursuant to § 1692e(2) of the FDCPA, which provides that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.
>
> (2) The false representation of--
>
> (A) the character, amount, or legal status of any debt; or
>
> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

15 U.S.C. § 1692e(2). Defendant allegedly violated this provision of the FDCPA for "falsely represent[ing] the amount, character, and legal status of the debt". [Docket No. 1-4, at 2.] Plaintiff's claim under this provision of the FDCPA fails for substantially the same reasons as above.

First, it is unclear how Defendant made false representations about the disputed debt in a communication "unrelated" to said debt. [Docket No. 1-4, at 2.] To be sure, § 1692e(2) facially applies to the "collection of *any* debt", 15 U.S.C. § 1692e(2) (emphasis added), but the singular focus of this lawsuit is the disputed leasing or rental debt in the amount of $37,987.00. *See generally* [Docket No. 1-4.] Second, and putting aside this inconsistency, the allegation that Defendant "falsely represented the amount, character, and legal status of the

---

unclear what exactly is inaccurate about Defendant's communications. It appears that the account may be the product of supposed "fraud and a result of identity theft." [Docket No. 1-4, at 9.] But these discrepancies and uncertainties are neither here nor there for present purposes. Plaintiff's claim fails for the two reasons above.

debt" because the documents provided "inaccurate information and do not reflect the true nature of the alleged debt" is insufficient to state a claim; a point of law Judge Williams also apprised Plaintiff of in previously dismissing her § 1692e(2) claim in a prior case. *See Coulter*, 2024 WL 4265509, at *2 ("Plaintiff's Amended Complaint does not provide any details regarding what was inaccurate or falsely represented by Defendant in its communications related to the disputed debt. Plaintiff did not provide any details describing, nor did she attach, any of the disputed communications from which the Court could ascertain if Defendant used false, deceptive, or misleading representations to Plaintiff ….").

While Plaintiff provides more details in this case about the communications through her attachments, it is still unclear to the Court what exactly Defendant allegedly falsely misrepresented about it.[5] *See* [Docket No. 1-4, at 8–9.] Plaintiff, even as a *pro se* and *in forma pauperis* litigant, must set forth short and plain statements of her claims to give Defendant "fair notice of what the … claim is and the grounds upon which it rests." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555). That obligation is not satisfied here.[6]

---

[5] Another pleading defect is the lack of an allegation that Defendant's putatively false representations were "in connection with the collection of any debt." 15 U.S.C. § 1692e(2); *see* [Docket. No. 1-4.]

[6] Because Plaintiff's claim flounders for these reasons, the Court will not take a position on Defendant's "[m]ore general[ ]" argument that it fails because the FDCPA does not impose a duty on debt collectors to investigate a debt either before or after a consumer disputes it. [Def.'s Br., at 7–8.] The Court will nevertheless make several prudent observations in the event this issue is resurrected by way of an amended complaint. First, Defendant's reliance on *Yentin v. Michaels, Louis & Assos., Inc.*, No. 11-0088, 2011 WL 4104675 (E.D. Pa. Sept. 15, 2011), is misplaced. [*Id.*] *Yentin* "only discussed debt collectors' lack of a duty to independently investigate debts in the context of a plaintiff's self-stylized claim for a breach of the 'duty to investigate.'" *Hylton v. AmeriFinancial Sols., LLC*, No. CV 18-2206, 2018 WL 6044734, at *3 (E.D. Pa. Nov. 19, 2018) (internal citation omitted). Plaintiff makes no such claim here. *See* [Docket No. 1-4.] After a persuasively thorough recitation of pertinent

B. <u>Fair Credit Reporting Act</u>

The FCRA seeks "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)). Section 1681s-2 "imposes two duties upon furnishers of information: the duty to provide accurate information (§ 1681s-2(a)) and the duty to undertake an investigation upon receipt of notice of dispute from a consumer reporting agency (§ 1681s-2(b))." *Voranau v. LoanCare*, No. CV 19-16825 (FLW), 2020 WL 13572962, at *2 (D.N.J. Apr. 13, 2020) (internal citation omitted). Plaintiff alleges that Defendant violated § 1681s-2b, "the only section [under the FCRA] that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information", *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011), "for furnishing inaccurate information to the CRAs and failing to correct it." [Docket No. 1-4, at 2.]

---

caselaw, the *Yentin* court specifically "conclude[d] that a plaintiff may state a claim under § 1692e(2)(A) merely by alleging that a defendant debt collector misstated a material fact regarding the character, amount, or legal status of any debt in connection with the collection of that debt without averring any intent or awareness on the part of the defendant." *Yentin*, 2011 WL 4104675, at *17. Additionally, Defendant's citation to *Slanina v. United Recovery Sys., LP*, No. 3:11-CV-1391, 2011 WL 5008367, at *3 (M.D. Pa. Oct. 20, 2011), is inapposite because that court found no duty to investigate and verify the debt at issue pursuant to § 1692g(a)(4), not § 1692e(2). Lastly, *Ramos v. LVNV Funding, LLC*, 379 F. Supp. 3d 437 (E.D. Pa. 2019), possibly cuts slightly more in Defendant's favor. There, without addressing *Yentin*, the court found that § 1692e and 1692f do "not require a debt collector independently to investigate and verify a debt *prior* to collection." *Ramos*, 379 F. Supp. 3d at 443–44 (emphasis). By contrast, however, Plaintiff arguably alleges that she disputed the debt *before* Defendant's collection efforts. *See* [Docket No. 1-4, at 2.] In any case, if this issue reemerges via an amended complaint, more developed briefing is necessary to adequately address it.

Plaintiff's present claim is similarly deformed as that before Judge Williams. "The duties that Plaintiff alleges Defendant failed to perform are <u>only imposed after a furnisher receives notice by a credit reporting agency</u> pursuant to 15 U.S.C. § 1681i(a)(2) which cannot come directly from the consumer." *Coulter*, 2024 WL 4265509, at *2 (underline in original) (citing *Radley v. Experian Info. Sols., Inc.*, No. 17-2755, 2018 WL 1513576 at *3 (D.N.J. Mar. 26, 2018)). As Judge Williams explained:

> A plaintiff must plead that she "sent notice of disputed information to a consumer reporting agency, (2) the consumer reporting agency then notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information." A plaintiff must allege that a credit reporting agency provided the required notice to a furnisher about the dispute, as it is considered an "essential element" because "only after credit reporting agency notification can the furnisher face any liability to a private individual."

*Id.* (quoting *Radley*, 2018 WL 1513576 at *3). Here, as before, the Complaint does not "assert that the credit reporting agencies provided notice to Defendant in order to plead all of the required elements pursuant to 15 U.S.C. § 1681s-2(b)." *Id.*; *see* [Docket No. 1-4.] This claim will therefore also be dismissed.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff Amber Coulter's Motion for Leave to File a Sur-Reply is **DENIED**. Defendant IQ Data's Motion to Dismiss is **GRANTED** and the Complaint **DISMISSED WITHOUT PREJUDICE**. Plaintiff shall be permitted to file an amended complaint within thirty (30) days addressing the deficiencies identified herein. If Plaintiff elects not to file an amended complaint, the Court will deem the Complaint dismissed with prejudice. An accompanying Order shall issue.

| | |
|---|---|
| **February 3, 2026** | /s/ Renée Marie Bumb |
| Date | RENÉE MARIE BUMB |
| | Chief United States District Judge |